[Cite as *State v. Thornton*, 2014-Ohio-2773.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100592**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DARRELL THORNTON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575107-A

**BEFORE:** E.T. Gallagher, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 26, 2014

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Ryan Bokoch
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Darrell Thornton ("Thornton"), appeals his drug trafficking and permitting drug abuse convictions. We find no merit to the appeal and affirm.

{¶2} Thornton was charged with two counts of drug trafficking in violation of R.C. 2925.03(A)(1) and (A)(2), one count of drug possession in violation of R.C. 2925.11(A), and one count of permitting drug abuse in violation of R.C. 2925.13(A). The trafficking and permitting drug abuse charges each included a juvenile specification, alleging that the offenses were committed within 100 feet or within view of a juvenile. The case proceeded to a jury trial.

{¶3} One of the prospective jurors, Mr. Rodriguez ("Rodriguez"), was a police officer with the Cuyahoga Metropolitan Housing Authority ("CMHA"). During voir dire, he stated that he knew two CMHA officers who were expected to testify for the state and that he would be biased. He also admitted that he would give "an automatic stamp of credibility to them" as he has trained and worked with them. Rodriguez was ultimately excused for cause.

{¶4} Three witnesses testified for the state. Detective Michael Duller ("Duller"), a detective in the Cleveland Police Department vice unit, testified that on June 5, 2013, he conducted a "controlled buy" with a confidential reliable informant ("CRI"). He considered the informant reliable because he has consistently provided accurate information to police for over nine years. On the evening of June 5th, Duller gave the

CRI a $20 bill that had been marked and photocopied with its serial number. The CRI also wore a wire that could transmit any conversation he had with the suspects to Duller's radio.

{¶5} Duller parked his unmarked vehicle across the street from a Dairy Mart located at the corner of West 89th Street and Detroit Avenue in Cleveland. Duller observed two men exit a white Oldsmobile parked at the Dairy Mart and approach the CRI. He recognized one of the men as Walter Cockrell ("Cockrell") from prior arrests. The other man was later identified as Thornton. A few minutes later, another group of males entered the parking lot, and a juvenile, who was later identified as G.J., got into the back seat of the white Oldsmobile with the CRI. Thornton sat in the driver's seat and Cockrell sat in the front passenger seat.

{¶6} When the sale was complete, the CRI gave Duller a verbal signal and G.J. then exited the vehicle. Duller, who continued to listen to the conversation, heard someone demanding a piece of the crack as "commission" for the sale. Duller explained that drug dealers in this area often use "middle men." Middle men

> are usually addicted to narcotics and are seeking narcotics but may not have the money to purchase them on their own behalf so they will negotiate deals for other addicts. And, as a result of that, they will then take a portion of the proceeds of that purchase for their own behalf, and that was the case.

Tr. 368.
After reaching an agreement on the commission, the CRI exited the vehicle. The white Oldsmobile, driven by Thornton, proceeded down Detroit Avenue, where takedown units

arrested him. Meanwhile, other takedown units were directed to arrest G.J., and recovered from him the marked "buy" money.

{¶7} Police searched Thornton, Cockrell, and the vehicle at the time of Thornton's arrest and did not find any cocaine or other contraband. Duller testified that he has witnessed drug trafficking suspects swallow small pieces of crack cocaine in an effort to conceal them. The pieces given as "commission" may be as small as a crumb. Duller suggested that Thornton may have swallowed the cocaine to hide it from police.

{¶8} Detective Clinton Ovalle ("Ovalle"), of CMHA, and Lieutenant Lou Pipoly ("Pipoly"), who head the Cleveland Police Department First District vice unit, also participated in the "controlled buy." They corroborated Duller's testimony. Pipoly, who initiated the stop of Thornton's vehicle, testified that Thornton cooperated with police.

{¶9} The jury found Thornton guilty of one count of drug trafficking, in violation of R.C. 2925.03(A)(1), and one count of permitting drug abuse, in violation of R.C. 2925.13(A). They found him not guilty of the other two counts in the indictment. The court sentenced Thornton to community control sanctions. Thornton now appeals and raises three assignments of error.

## Sufficiency and Manifest Weight of the Evidence

{¶10} In the first assignment of error, Thornton argues his convictions were against the manifest weight of the evidence. In the second assignment of error, he argues there was insufficient evidence to sustain his convictions. Although the terms

"sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review to Thornton's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶11} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶12} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id*. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶13} Thornton argues there was no evidence that he knowingly sold or offered to sell cocaine to the CRI because police found no drugs or buy money in his possession at the time of his arrest. He also asserts that none of the witnesses identified his voice on the audio recording taken from the CRI's wire and that there was no evidence proving that G.J. was a juvenile.

{¶14} Thornton was convicted of trafficking in violation of R.C. 2925.03(A)(1), which states, in pertinent part, that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." He was also convicted of permitting drug abuse in violation of R.C. 2925.13(A), which states that "[n]o person who is the owner, operator * * * of [a] vehicle, as defined in division (A) of section 4501.01 of the Revised Code, shall knowingly permit the vehicle to be used for the commission of a felony drug abuse offense."

{¶15} Although no one identified Thornton's voice on the audio recording, which was played for the jury, circumstantial evidence established that he was complicit in the crimes as an aider and abettor. Ohio's complicity statute, R.C. 2923.03(A)(2), states, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(F) further provides that "[w]hoever violates this section is guilty of

complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender."

{¶16} To prove a defendant's complicity through aiding and abetting "[t]he evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245, 754 N.E.2d 796 (2001). Proof of a shared criminal intent may be inferred from the circumstances surrounding the offense including presence, companionship, and conduct before and after the offense is committed. *Id*. at 243.

{¶17} Duller testified that he observed Thornton and Cockrell approach the CRI in the Dairy Mart parking lot where he overhead them discussing the sale of cocaine. They informed the CRI that neither of them had any cocaine and offered to transport the CRI in Thornton's white Oldsmobile to a location where cocaine was readily available. Moments later G.J. arrived in the parking lot and entered the back seat of Thornton's white Oldsmobile with the CRI. Thornton sat in the driver's seat, and Cockrell sat in the front passenger seat. Referring to G.J., either Thornton or Cockrell informed the CRI that "he's one of our people." Shortly thereafter, the CRI gave Duller a verbal signal that the transaction was complete.

{¶18} After G.J. exited the car, Duller heard Thornton and Cockrell demanding a larger piece of cocaine as commission. Although Thornton's voice was not identified in the recording and no drugs were found in his possession, the fact that he allowed the sale

to occur inside his vehicle is sufficient to prove that he knowingly permitted drug abuse and that he aided and abetted G.J. in the sale of drugs.

{¶19} We find no reason to question Duller's credibility. The testimony of all three witnesses was consistent with each other and corroborated one another's testimony that Thornton arranged the sale of drugs with G.J. Therefore, the jury's conclusion that he aided and abetted the sale of cocaine and allowed the sale to take place inside his car is sustained by the manifest weight of the evidence.

{¶20} As previously stated, Thornton's convictions included a juvenile specification, which required the state to prove, beyond a reasonable doubt, that Thornton:

> commit[ted] the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

R.C. 2925.01(BB). Thornton argues there was insufficient evidence to prove that G.J. was a juvenile because the state did not offer his birth certificate into evidence to establish his exact age.

{¶21} R.C. 2925.01(N) defines "juvenile" as "a person under eighteen years of age." Although the statute does not require proof of the specific age or identity of the alleged juvenile, the state must prove beyond a reasonable doubt that any such individual is under the age of 18. *State v. Creech*, 12th Dist. Fayette No. CA2006-05-019, 2007-Ohio-2558, ¶ 18.

**{¶22}** In this case, when Ovalle described the events immediately following the drug sale, he stated that he observed "the young male" exiting the white Oldsmobile. Pipoly testified that G.J. was 17 years old and that his date of birth was February 18, 1996. In response to defense questioning, Duller testified that there were charges pending against G.J. in juvenile court. This testimony, which provided the juvenile's precise age and date of birth, is sufficient to establish G.J. was a juvenile at the time Thornton committed the offenses giving rise to this case. The jury found this evidence credible, and we find nothing in the record to contradict this evidence. Therefore, the juvenile specifications are sustained by sufficient evidence and the manifest weight of the evidence.

**{¶23}** Accordingly, the first and second assignments of error are overruled.

### Voir Dire

**{¶24}** In the third assignment of error, Thornton argues he was prejudiced by statements made by a juror during voir dire. During voir dire, juror Rodriguez admitted that he trained and worked alongside two potential witness as CMHA officers. Thornton contends Rodriguez's statements about his relationship with these officers unfairly influenced the other jurors into believing they should be credible witnesses.

**{¶25}** Thornton did not object to Rodriguez's statements and therefore forfeited all but plain error. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 52. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prevail

under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

{¶26} During voir dire, the judge questioned every juror in an obvious attempt to uncover biases. Rodriguez candidly admitted that he would be biased in favor of Ovalle because they worked together, often in arresting drug traffickers. During the voir dire, the following dialogue took place:

> THE COURT: How do you feel about sitting in judgment in a case where 2 of your colleagues are expected to be called as witnesses?
>
> THE JUROR: The problem with that is, I train them. I admire the men. So I can't really say I would be unbiased.
> *    *    *
>
> THE COURT: You mentioned that you thought that you may not be able to be unbiased. Can we talk about that a little further?
>
> THE JUROR: Okay. Yes.
>
> THE COURT: If you would take it from the perspective of the accused for a moment — I mean, this is with great respect to you — would you want to select you as a juror in this case?
>
> THE JUROR: I think I honestly work alongside them too closely to be involved in this case. So —
>
> THE COURT: Okay. If you were convinced that the state did not meet their burden of proof of convincing you beyond a reasonable doubt as to the essential elements of the crimes charged, what would you do?
>
> THE JUROR: If I was going to find reasonable doubt, that they didn't meet the requirements, then he would be found not guilty.
>
> THE COURT: Okay.

THE JUROR: I would decide that he's not guilty, if that['s] what it came down to.

&ast; &ast; &ast;

THE COURT: What kind of pressure would you feel, real or otherwise, imposed upon you by virtue of sitting in judgment in a case where 2 fellow officers with whom you trained were testifying?

THE JUROR: None.   None at all.

**{¶27}** None of Rodriguez's responses mentioned anything about the officers being good, honest people.   Rodriguez merely stated that he would be biased in favor of the officers because he trained them and regularly works alongside them.   We find nothing prejudicial about Rodriguez's responses to the court's questions.   Furthermore, when the court questioned every other juror, they agreed they would not give police officers any more credibility than any other witness.   Nothing in the record indicates that the jury was influenced by Rodriguez's statements.   Thornton bears the burden on plain-error review, and he has not met that burden.

**{¶28}** Therefore, the third assignment of error is overruled.

**{¶29}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KENNETH A. ROCCO, P.J., and
MARY EILEEN KILBANE, J., CONCUR